UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA



Felicia King, Lewis Deans- King                March 31, 2006

**Plaintiffs**

V.S.

Case#_____
3:06-CV-00071 (TMB)

Discovery Luxury LLC
Tom & Deanna Robbins – Manager(s)

Steven L Jones Aba No. 9511102 Attorney for

**Defendants**

                              COMPLAINT UNDER THE CIVIL RIGHTS ACT
                                            42.U.S.C. 1983
                                            (Nonprisoner)

**A. JURISDICTION**
Jurisdiction is invoked under 28U.S.C. 1343(a)(3) and 42 U.S.C. 1983 if you assert jurisdiction under any different or additional authorities, list them below

FAIR HOUSING CLAIM AND COMPLAINT
FOR REASONABLE ACCOMMODATIONS

This day of March 31, 2006 a Fair Housing Complaint is being filed in the Jurisdiction of District Court in the District of Alaska which has Jurisdiction. Over Civil Rights Actions (42 U.S.C. 1983) A Fair Housing complaint is being filed on the behalf of Plaintiffs Felicia King and Lewis Deans King.  Pursuant to The reasonable accommodation mandate of the FHA applies to any "dwelling, "42 U.S.C. 3602(b) regardless of whether it is federally subsidized or not. A housing provider can not deny housing opportunity because of characteristics or behavior related solely to the persons Disability.  (1) And is required to make reasonable accommodation in rules, policies, practices, or services when accommodations are necessary to afford such persons equal opportunity to use and enjoy Dwelling 42 U.S.C 3604 (f)(3)(b).

Plaintiffs have not caused any destruction or debasement of property, other then property normal extremely minor wear and tear.  Plaintiffs are current in their rent, law abiding and respectful of other tenants rights to quiet enjoyment.

Plaintiffs are disabled, and have requested reasonable accommodations be made on several occasions.  Sept 1, 2005 one month after plaintiff moved in property, plaintiffs Experienced constructive eviction, by the Master bedroom having garage door attached and rolling under it, far beyond the noise level of the other garage doors, at all times in the morning and night when ever several tenants who shared it, activated it.  Plaintiffs requested apartment be changed or garage door fixed. Defendants told Lewis Deans, To tell his mother she will get use to it. Plaintiff neurological and sleep patterns were interrupted several times through the night, leaving Felicia King, who suffers from post traumatic stress, traumatic brain injury to be re-traumatized over and over again, by her neurological system being violently interrupted. Defendants deceived Plaintiffs, By showing apartment they said was similar or exactly like the one we was getting, but did not disclose master bedroom, had the noisiest garage door in the housing community. The one it showed, did not have the master bedroom above a garage, or did not have a garage at all. Plaintiffs rent is paid partially by Section 8 Federal Housing Subsidy, which requires landlords and housing managers to provide reasonable accommodations to the disabled and vulnerable populations.  Plaintiffs believe the vulnerability of being disabled in a new state was exploited by Defendants.  Defendants provided a lease that failed to explain, and fully disclose landlords intention to transfer utility bill, acting under the color of state law, which allows non-disclosure, then defendants refused to make reasonable accommodations for Felicia King who needs to have clear understanding to compensate for traumatic brain injury, and longer adjustment periods, especially when in smaller apartments or confined spaces like the one rented from defendants which is a very marginal 600 square feet, which was rented under the duress of needing a place, in a new state, and  under duress from transitioning, and loosing housing space abruptly.

Thus an electric bill was transferred without Plaintiff having knowledge or understanding why it was not anything in the lease about transfer. Thus Plaintiff felt a lost of control and understanding to what was going on. And had to adjust to something she was never allowed to have a reasonable adjustment period too or she was deprived of her ability to prepare in advance, which her disability, requires her to do, to function, adequately This transfer of utility bill occurred in December 2005, when Plaintiffs fell behind in an electric bill, which plaintiffs needed to adjust to, and budget, since it was higher then plaintiff had experienced. Plaintiff applied for heating assistance, and in anticipation of heating assistance, electric bill was transferred to Defendants. Which gave Plaintiff a feeling of a lost of control, necessary for survival functioning, while coping with cognitive deficiencies. Plaintiff thought that the disconnection did not occur because electric company had knowledge of her applying for heating assistance, not because of it being transferred. Since not state clearly about transfer, Plaintiff Felicia King then became allegedly non-compliant with something not made clear or stated in the lease. But Plaintiff Felicia King who has TBI, was suppose to figure out something omitted in the lease is unfair, and violates her fair housing rights of disclosure, in order to have choice, and to understand compliance.

February 1, 2006, I mailed a certified letter with rent and reminded defendants I had made a request for the garage door to be fixed or an apartment change in Sept 2005. And I told them, I had not gotten use to it. The winter had stiffened the door, which made the noise to the extreme of any level of coping. And could he please oil it or fix it. By now I was frequently sleeping in the living room.

February 8, 2006 heating assistance gave me a stipen towards the electric bill, but the transfer without my knowledge incurred extra cost about $250 more to have it transferred back in my name. This was in addition to the $190 I still owed.

February 15, 2006, I get a quit notice from the landlord saying he was sent the electric bill and I owe him $258 for the bill being transferred, and to turn it back in my name. February 15, 2006 I write another letter and send it certified tell him enclosed is $50, let me see what is going on, and that when he called me a couple of days ago it didn't sound that serious, and could we devise a payment plan because I don't understand why it was even transferred. I also stated in the letter I hope this is not a form or retaliation, because I complained about the Garage door, because that would be unfair. And I will pay on the bill to get it Down.

Although someone made the door more quiet in February, 2006, the landlord, I felt immediately retaliated for me reminding him and requesting it again, since the electric was transferred in Dec 2005, and he only got disgruntled about it after he received a certified letter the first week in February 2006, asking to do something about the door. So Defendant retaliated against me asserting Fair Housing Rights.

And wanting and needing, not to have my neurological system jerk around. Defendant also did not disclose that the possibility a Carbon Monoxide poisons, seeping through vents, from cars being warming in the winter, in the Garage. Carbon monoxide levels registered as high as 26 with the window closed and a detector near it. When the legal level is 9. I did not know I was being poisoned until I became dizzy, and had headaches, I had to keep other windows open in other rooms to make sure we did not die in our sleep. And I had to keep an electric heater on me to keep warm., so that might have spiked the electric bill.

March 8, 2006, I write defendant another letter telling him, the apartment may be beyond my affordability, however I would in most probability have all the bills down, since the weather was now warming, and that I would seek services to help me like safe city. And if he was really worried, we could make a mutual agreement to terminate the lease earlier, which would relieve me of a month or two of rent, and I could pay any outstanding bills, eventhough I would be paying on them regularly anyway. And I wanted to make sure all was well, and the tenancy was terminated on good terms. Since the lease would end in July 2006.Which is only a few months. See *cobble hill Apartment Co. V Mclaughlin 1999 Mass App Div. 166(Mass App. Div. 1999)* . *Cornwell and Taylor V. Moore, 2000 WL 1887528 (Minn App. Dec. 22, 2000)* Counterclaims under the Fair Housing Act, acts as part and parcel of the eviction proceeding itself See e.g., Josephinium Associate V. Kahli. 45p, 3d 627 (wash. App. 2002); Newell v. Rolling Hills Apartments, 134 F. Supp.sd 1026, 1038 (N.D. Iowa 2001) (collecting and summarizing cases holding defense applies in Iowa); Ansonia Acquistion I LLCv. Francis, 1999 "WL 1076142m *5, 26 Conn L Rptr. 363 (Conn .Super. 1999); Lable & Co. v. Flowers, 104 Ohio App. 3d 227, 235, 661 N. E. 2d 782 (1995) Mascaro v. Hudson, 496 So. 2d 428, 429 (La.App.1986); *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982); *Marine Park Assocs. v. Johnson*, 1 Ill.App.3d 464, 274 N.E.2d 645 (1971); *Abstract Inv. Co. v. Hutchinson*, 204 Cal.App.2d 242, 248, 22 Cal.Rptr. 309 (1962). See also *Arnold Murray Constr., L.L.C. v. Hicks*, 621 N.W.2d 171 (S.D.2001); *Malibu Inv. Co. v. Sparks*, 996 P.2d 1043 (Utah 2000); *Boulder Meadows v. Saville*, 2 P.3d 131 (Colo.App.2000); *Hous. Auth. of City of Bangor v. Maheux*, 748 A.2d 474, 476 (Me.2000); *City Wide Assocs. v. Penfield*, 409 Mass. 140, 564 N.E.2d 1003 (1991); *Schuett Inv. Co. v. Anderson*, 386 N.W.2d 249 (Minn.App.1986). But see *Lake in the Woods Apartment v. Carson*, 651 S.W.2d 556, 558 (Mo.App.1983).
March 10th Defendant sent me a quit letter after accepting my rent and a partial payment on utilities March the 1st. Still I am baffled, as to where the omission, came in, on utility transfer or who to pay first, and Tom Robbins hasty, and unresponsiveness to letters, now is refusing any level of accommodation, even knowing and being reminded we are on a fixed income, and may need a little time, and of Plaintiffs having every intention of not flouting any bills.

And Plaintiffs explained they had no idea of a transfer, and or electric utility cost, and if they knew about a transfer they could have prevented it and not caused any inconvenience.

March 24, I carefully looked at my lease; it had nothing about utility transfer.yet I am being harassed about something that was not disclosed to me. And defendants are refusing any reasonable accommodations, of time, knowing that they have not disclosed anything about a transfer, they are now using as a weapon, of retaliation, because of an assertion of Fair housing Rights by Plaintiffs. This indifference occurred after the reminder and request to fix the garage door. And defendants ignored reasonable accommodate to preserve tenancy until end of Section 8 lease, because defendants just wanted to retaliate and to be hyper punitive on someone in the state of vulnerability and disabled.

And to attempt to throw two people out with disabilities, and not give any reasonable accommodations for transition, for Lewis king Deans who is on a breathing machine, who could suffer from heart failure, and Felicia King, who has traumatic brain injury and post traumatic stresses and physical disabilities, including fibromyalgia. While both needing reasonable accommodations for transitions.

Or could risk, serious adversity, and health break down. All we asked was for was reasonable accommodations to the end of the lease. We signed a lease for 1 year, not a lease based on retaliatory, and punitive measures, when requesting a repair. And landlord using non-disclosure of transfer of utilities to use later to be unreasonable, and demanding and mean spirited. And retaliatory. Defendants practice irresponsible and hyper punitive measures towards the disabled, vulnerable and defenseless, and put Plaintiffs under unnecessary Duress, and emotional distress, from harassment and extreme punitive measures.

1. Defendants took 5 months to attempt to fix garage door causing constructive eviction
2. Landlord breached promise of trash compactor, which placed an under burden on Plaintiffs to carry trash, often at a more then unusual distance to dispose of trash. Felicia King has fibromyaligia, which pose an undue hardship.
3. Defendants omitted and committed his intention and purposes for the utility transfer. Omitting utility transfer and disconnection, and then considered it a violation to be sued against Plaintiff. This is a violation of Fair housing.
4. Defendants need to return rent money for noisy garage door in an apartment they sold on being noise controlled. Deceptive Business Practices and Breach and a violation of Fair housing.
5. Defendants pretended, utility transfer, was not a problem for 2 months, then used it as a retaliatory measure
6, Defendants attempted to slander Plaintiffs as retaliation to destroy ability to find housing and further exploitation Using a non-existence, or non-disclosed breach, and made up damages to attempt to strengthen a week case made up for retaliatory purposes.
7. Since Defendants is this punitive over a repair requested, I have reason to feel threatened and intimidated by him.

Because Plaintiffs have done nothing to warrant this level of harassment and retaliation. So Plaintiffs plan to move, but Plaintiffs feel well within their rights to finish the lease and have the accommodation of reasonable accommodation for transition.

8. Equal enjoyment is ~~not~~ diminished, and I will need reasonable accommodations of time to move. However I will hold on to rent and utilities money until a court order. Plaintiffs have had successful housing without any court battles for 15 years. Plaintiffs have never had any serious housing violations or illegal activities.

9. Complaint will be forward HUD office of fair Housing, and the Dept of Justice office of Civil rights. To investigate ADA rights violations, and Fair Housing, for Violations. Of discrimination in housing and unfair housing practices and office Of Civil Rights violations. Since Defendants have some forms of contracts for federal funding, and Federal financing subsidies. 24 CF.R. 96655 etseq.(public housing): 2 C.F.R. Part 247(privately owned federally subsidized properties)

24 C.F.R 83 (definition of Recipient..")

It is discriminatory for a landlord to selectively or more harshly enforce rules because of a tenants disability.

Cause – Punitive Damages, emotional Duress and Distress, Constructive Eviction, Deceptive Business Practices, Breach of Contract. Harrassment. Refusal of Special Accommodations required by Law of housing providers, with subsidy contracts. Violations of ADA, Section 504 1973, Fair Housing Act, and Constitutional Rights. Plaintiffs is seeking full jury trial necessary to pursue claim . Environmental Risk Factors. Such as Carbon Monoxide Poisoning Non- disclosure.

Damages $100, 000

*[signature]* Lylecea King    3-31-06

*[signature]* Louis & James King    3-31-06